IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-00890-PSF

DANIEL D. PETERMAN,

 Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

 Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter was set for oral argument on March 2, 2007 on plaintiff's appeal of denial of social security benefits.  Having reviewed the record and considered the written arguments and submissions of counsel, the Court determines that oral argument will not materially aid its determination and now enters the following Order.

**I. BACKGROUND**

Plaintiff Daniel D. Peterman appeals from the decision of the Commissioner of Social Security denying his application for social security disability benefits.  The decision of the Commissioner became final on April 28, 2006 when the Appeals Council notified plaintiff that it had denied review of the decision of the Administrative Law Judge ("ALJ").  (AR[1] 5-7).  Plaintiff timely filed his appeal from the final decision of the

---

[1] The Administrative Record (AR) in this case consists of one volume, pp. 1-225.

Commissioner on May 12, 2006 (Dkt. # 1). The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Plaintiff, a 56-year old man, filed his claim for benefits on or about May 25, 2004, seeking disability benefits and supplemental security income beginning April 20, 2004. (AR 47, 154). In his Disability Report, Mr. Peterman listed "[b]ack and neck problems, bul[]ging disks, hearing loss, plate in ankle, arthritis, [and] headach[e]s" as the conditions that limit his ability to work. (AR 53). He contended in his Report that he cannot lift, carry, bend over, or stoop; his back goes out, he has had bad headaches and is in constant pain, which makes him sick to his stomach, and he gets tired very easily. (AR 54).

After initial denial of his claims, plaintiff appealed and a hearing was held before the ALJ in Colorado Springs, Colorado on July 12, 2005. (AR 191-225). Plaintiff testified at the hearing and was represented by counsel. Also testifying was Dennis Duffin, a vocational expert. Upon review, the ALJ denied plaintiff's application in a written decision issued on September 6, 2005 (AR 17-24).

## II.     THE ALJ'S DECISION OF SEPTEMBER 6, 2005

The ALJ denied plaintiff's application for benefits at step five of the five-step process. *See generally Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). The ALJ found that plaintiff had severe impairments and was unable to perform his past relevant work, but that other jobs existed in significant numbers in the regional and national economies that plaintiff could perform considering his residual functional capacity, age, education, and work experience. (AR 20, 22-23).

In reaching his determination, the ALJ found that plaintiff had the medically determinable impairments of degenerative arthritis and congenital stenosis of the cervical and lumbar spine, which constitute severe impairments of the neck and back because they cause significant functional limitations. (AR 20). Plaintiff does not challenge this finding.

The ALJ next found that plaintiff's impairments or combination of impairments did not meet or medically equal the criteria of any of the listed impairments in Appendix 1 to Subpart P of the Social Security regulations. (*Id.*). Specifically, the ALJ found that plaintiff "does not have the degree of joint deformity, nerve damage, muscle weakness, or inability to ambulate effectively that is required to meet listing 1.00 for orthopedic impairments." (*Id.*). Plaintiff challenges this finding.

Next, the ALJ found as follows with regard to plaintiff's residual functional capacity ("RFC"):

> [The ALJ] finds that the claimant has the residual functional capacity to perform light exertional activity; lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently; sitting, standing and/or walking up to 6 hours per 8-hour day each, with the option to alternate between sitting and standing as needed; pushing and pulling to the light exertional limits; no climbing of ladders, ropes, or scaffolds; occasional stooping, crouching, or crawling; occasional reaching bilaterally; he should avoid concentrated exposure to extreme cold, wetness, and humidity.

(AR 20) (emphasis omitted). In arriving at his determination of plaintiff's RFC, the ALJ relied on plaintiff's testimony, MRI evidence, and reports of examining physicians,

including the findings of the state agency's examining consultative physician. (AR 20-22).

The ALJ first recounted plaintiff's testimony that he no longer does household chores because it hurts his back too much; he takes Tylenol 4's and Flexeril for his neck and back pain; he gets terrible headaches three to four times per month that last from one to three days and that can cause him to become disoriented; his left arm and both elbows hurt, and he has tingling in his hands; his back pain runs from the center of his back down into his legs; he has trouble sleeping at night; lying down provides the most relief, and he lies down quite a bit during the day; alternative sitting and standing provides some relief; he has a hard time with doctors because he doesn't have the money to go to a specialist; he has good days and bad days; on good days he tries to go for a walk and gets to the mailbox, while on bad days he is bedridden; he used to cook and clean but doesn't anymore; he hasn't lifted more than four or five pounds in the last few weeks; he can sit for 15 minutes maximum; standing in one spot causes his lower back and legs to hurt "really bad;" cold and humidity hurts his back; and moisture causes pain. (AR 20-21). The ALJ found that the record evidence supported plaintiff's testimony regarding the existence of all his symptoms, but that "claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (AR 21).

The ALJ accurately described the record evidence as follows: The MRI evidence showed some stenosis and possible, but not definite, nerve impingement. (AR 21, 127, 129). When examined by the state consultative physician, Dr. Roly

Kanard, on August 28, 2004, plaintiff was not cooperative and appeared not to be trying to do the requested tasks, and Dr. Kanard found it difficult to ascertain if plaintiff was giving a good effort or "simply sandbagging." (AR 21, 109). He was seen by Dr. G. Thomas Morgan, a board certified pain specialist, in November 2004, during which session plaintiff "reported diffuse tenderness everywhere that he was touched and his response to the lightest palpation was quite dramatic." (AR 21, 125). Dr. Morgan also reported that motion testing was impossible; Waddell's testing was 5/5 positive;[2] there was pronounced giveway weakness throughout the upper and lower extremities, but no consistent focal weakness, atrophy fasciculation or tremor; sensory testing was patchy decreased to pinprick in no anatomic distribution throughout all four extremities; reflexes were trace/4 in extremities and appeared symmetric. (AR 21, 125). The diagnostic impression was chronic complaints of neck pain, mid-thoracic and low back pain, multiple nonphysiologic signs and suspected marked functional overlay. (AR 21, 126). Plaintiff returned to Dr. Morgan on January 4, 2005 requesting stronger pain medication, at which time his pain diagram was significant for being filled in head to toe. (AR 21, 122-23). Dr. Morgan refused to prescribe medication because he suspected a history of narcotic abuse. (AR 21, 123). Plaintiff was seen by another pain specialist, Dr. Jeffrey P. Jenks, in April 2005 with similar examination results. (AR

---

[2] Waddell's signs are special maneuvers used to evaluate persons when exam findings are inconsistent. A positive Waddell's sign generally indicates a nonphysiological etiology of pain. M. Katherine Crabtree, DNSc, ANP, Pain Management (2000), *available at* http://www.medscape.com/viewarticle/425143. However, studies have indicated that there is no association between Waddell signs and secondary gain or malingering. David A. Fishbain, R.B. Cutler, H.L. Rosomoff, & R. Steele Rosomoff, Abstract, *Is There a Relationship Between Nonorganic Physical Findings (Waddell Signs) and Secondary Gain/Malingering?*, 20(6) THE CLINICAL JOURNAL OF PAIN 399 (2004), *available at* http://www.clinicalpain.com/pt/re/clnjpain/abstract.00002508-200411000-00004.htm.

21, 131-33). Dr. Jenks recommended epidural injections and was reluctant to prescribe narcotic medication, prescribing Tylenol 4 for plaintiff at that time. (AR 21, 133).

Plaintiff was also referred by his attorney to Dr. Jack L. Rook, who diagnosed chronic neck pain with moderate to severe spinal stenosis, chronic low back pain with advanced degenerative changes in the lumbar spine, and myofascial pain components in the neck and back. (AR 21, 145). Dr. Rook did not believe plaintiff was magnifying his symptoms, concluding that plaintiff required better pain management and assessing significant functional limitations. (AR 21-22, 146-47).

Ultimately, the ALJ accorded "greater weight" to the opinions of Dr. Kanard, Dr. Morgan, and Dr. Jenks than that of Dr. Rook. (AR 22). Considering the evidence as a whole, the ALJ concluded that plaintiff was "not nearly as limited as he and Dr. Rook indicate," and that plaintiff's "presentation, allegations and symptoms are significantly exaggerated, and they are not reliable." (*Id.*).

The ALJ then held that, based on his RFC, plaintiff could not perform his past relevant work, which was described as heavy and medium work as a machine operator, yardman, forklift operator, painter and maintenance repairer. (AR 22). However, the vocational expert testified that a person of plaintiff's age, education, work experience, and RFC could perform other jobs such as:

!   video rental clerk (light, unskilled work with 150,000 positions in the national economy and 2,450 positions in the regional economy);

!   gate guard (light, unskilled work with 50,000 positions in the national economy and 375 positions in the regional economy); and

!       information clerk (light, unskilled work with 66,500 positions in the national economy and 1,328 positions in the regional economy).

(AR 23, 217). Based on this testimony, the ALJ found that plaintiff was capable of making a successful adjustment to other jobs that exist in significant numbers in the national and regional economies. (AR 23). Accordingly, the ALJ found plaintiff was not disabled as defined in the Social Security Act. (*Id.*).

### III.     PLAINTIFF'S APPEAL

On appeal plaintiff first argues that the ALJ erred at step three of the process in determining that plaintiff's impairments were not equivalent to one of the listed impairments that are acknowledged to preclude substantial gainful activity. Pl.'s Br. (Dkt. # 7) at 11. He contends the ALJ failed to adequately articulate why plaintiff did not meet or equal a listing; instead, the ALJ stated a "conclusion without an explanation" and thus failed to state the basis of his decision. *Id.* at 12-13. He argues the ALJ failed to discuss his inability to ambulate effectively, *id.* at 15; failed to consider that prescribed medical treatment was not chosen, was ineffective, or was not affordable, *id.* at 16; failed to evaluate spinal stenosis-type pain, *id.* at 17; wrongfully relied on the positive Waddell signs, *id.*; failed to recognize that plaintiff stooped to relieve his back pain, *id.* at 18; and failed to weigh plaintiff's other impairments, such as headaches, in combination with his back injuries. *Id.* at 19.

Second, plaintiff contends the ALJ failed to properly determine plaintiff's RFC. *Id.* at 19. According to plaintiff, the improper RFC assessment stemmed from the ALJ's failure to assess all of plaintiff's impairments in combination and the ALJ's erroneous

7

finding that there was a lack of credible clinical corroboration to plaintiff's spinal injury. *Id.* at 20-21.

Finally, plaintiff contends the ALJ erred in holding that the Commissioner met her burden at step five of showing other work plaintiff can perform in substantial numbers, despite his impairments. *Id.* at 22. Plaintiff argues that the hypothetical posed to the vocational expert failed to include the following impairments: (1) headaches or tension headaches; (2) pain and hypersensitivity to pain; (3) psychological factors; (4) myofascial pain; (5) good days and bad days; and (6) fatigue. *Id.* at 23.

## IV.    ANALYSIS

### A.    Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted).

### B.    Whether the ALJ Erred at Step Three.

At step three, the ALJ determines whether a claimant has an impairment that meets or equals one of the listed impairments in appendix 1 of subpart 4 of the social security regulations. 20 C.F.R. § 404.1520(a)(4)(iii) (stating that If the claimant has an

impairment(s) that meets or equals one of the listings in appendix 1 of subpart 4 and meets the duration requirement, the claimant will be found disabled). In this case, the ALJ considered whether plaintiff's impairments met or equaled listing 1.00 for disorders of the musculoskeletal system and concluded that plaintiff did "not have the degree of joint deformity, nerve damage, muscle weakness, or inability to ambulate effectively that is required to meet listing 1.00 for orthopedic impairments." (AR 20).

The Commissioner concedes that the ALJ's discussion of whether plaintiff's back impairment met a listing was "sparse." Def.'s Resp. (Dkt. # 13) at 15; *see Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of the ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."). However, "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Accordingly, in determining whether the ALJ's step-three analysis was sufficient, the ALJ's findings and discussion of the medical evidence at all steps must be considered.

Plaintiff contends the evidence shows that his impairments met or equaled Listing 1.04 (disorders of the spine). Listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

9

>   resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>>   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
>   or
>
>>   . . . .
>
>>   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, App. 1 to Subpart P 1.04A, C.

   Reviewing these requirements in conjunction with the ALJ's decision, the ALJ's "sparse" discussion of whether plaintiff's back impairment met Listing 1.04 provides an insufficient explanation of the basis for his conclusion. The ALJ summarized only Dr. Morgan's findings regarding plaintiff's sensation, strength, and reflexes in his RFC findings (AR 21, 125-26), and failed to discuss any of the evidence in the context of the Listing 1.04 requirements. Indeed, the Commissioner concedes that plaintiff had stenosis and possible nerve root compression damage, some decreased strength in his left leg, some diminished reflexes, and positive straight leg raising tests, all of which are relevant to the Listing 1.04 requirements. Def.'s Resp. at 13. And there is evidence in the record to support such findings. (AR 103, 108-09, 125, 127, 129, 132,

144-45). The ALJ's conclusion that plaintiff had exaggerated his symptoms to some degree, even if supported, does not necessarily preclude his impairments from meeting the Listing 1.04 requirements. Finally, the ALJ's summary conclusion that plaintiff did "not have the degree of joint deformity, nerve damage, muscle weakness, or inability to ambulate effectively that is required to meet listing 1.00 for orthopedic impairments" is vague and does not elaborate on the "degree" to which plaintiff's impairment was required to, but did not, reach pursuant to Listing 1.04. (AR 20).

The Commissioner contends there is no evidence of plaintiff's inability to ambulate effectively. Def.'s Resp. at 13-14. First of all, that requirement is relevant only to Listing 1.04C, not 1.04A. In addition, with respect to whether plaintiff has met the Listing 1.04C requirements, there is at least some evidence that the Commissioner's contention regarding plaintiff's ability to ambulate effectively is incorrect. Appendix P provides guidance on the meaning of this term:

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, App. 1 to Subpart P 1.00B2b (emphasis in original).  Dr. Kanard reported in August 2004 that plaintiff's "gait is very slow and he walks with a bent waist. He is very stiff legged when he walks and somewhat unsteady on his feet."  (AR 108). Dr. Rook reported in June 2005 that plaintiff "ambulated stiffly into the examination room" and "required the assistance of his wife, as his balance was unsteady."  (AR 144).  Plaintiff was examined by a physical therapist in February 2006 who reported that his "[g]ait is slow and guarded with his cane."  (AR 164).  Plaintiff stated in a Disability Report that his walks are "less than 1/3 of a block with several rests and maybe once a month" (AR 86), and testified at the hearing that "[o]n a good day" his wife drives him to the grocery store and he can get around with her help if they are only getting one or two things.  (AR 210).  This evidence could support Dr. Rook's conclusion that plaintiff could only walk less than one city block without rest or severe pain, which would seem to constitute an inability to ambulate effectively.  (AR 148).

Because the ALJ failed to weigh in his decision the evidence to provide support for his findings at step three, and because the ALJ's findings at other steps of the process do not provide a proper basis for his step-three conclusion, it is not possible to "assess whether relevant evidence adequately supports the ALJ's conclusion that [plaintiff]'s impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."  *Clifton*, 79 F.3d at 1009.  Accordingly, the case is remanded to the ALJ to engage in a more thorough step-three analysis.

### C.     The ALJ's RFC Analysis

Because the Court is remanding the case to the ALJ based on an insufficient step-three analysis, the Court need not decide at this point whether the ALJ's RFC assessment was proper.  The ALJ's analysis on remand as to whether plaintiff meets the Listing 1.04 requirements could affect, or even render unnecessary, the RFC assessment.

### V.     CONCLUSION

For the reasons set forth above, the Court ORDERS the case REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion. The Clerk of the Court shall enter judgment accordingly.  Oral argument in this matter, set for March 2, 2007 at 1:30 p.m., is hereby VACATED.

DATED: February 28, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge